It is then charged that a sci. fa. to revive was brought, and judgment obtained in May, 1828. Upon the trial the plaintiff offered Matthews as a witness, who was rejected as incompetent to prove a payment made before the former judgment.
The defendant in his answer stated that the bond was found among the testator's valuable papers, and that there was nothing to show that any part of it had been paid. He admitted that the plaintiff always said to the executors that he had paid it, but denied that they told him they had no doubt of the fact, or intimated to him that they would not enforce the collection. On the contrary, he alleged that although they did not, out of common courtesy, flatly contradict his positive assertion, they gave him distinctly to understand that nothing could be done in the matter, but in due course of law; and as to the defendant's own knowledge or belief, he said that he knew nothing, and that he believed that most probably the debt was not paid, for he was altogether *Page 89 
ignorant that the plaintiff was able to make payment. He further (103) averred that the execution was not suffered to lie either from motives of compassion or a belief that the debt had been paid, but solely because the plaintiff was unable to satisfy it until just before the last suit was brought.
The plaintiff filed the deposition of Matthews, who swore that he heard the testator at his own house, a few weeks before his death, tell the plaintiff that the bond was fully paid, and that he would give it to him if he would apply in a few days. He also deposed that he gave this information to the plaintiff just before the last judgment was taken. The testator died in 1816.
Upon this case and this evidence, the court below submitted the following issue to a jury: whether or not the bond was paid to the testator; who found that it was. And thereupon, Daniel, J., decreed a perpetual injunction, and the defendant appealed.
I think the decree made by the Superior Court ought to be affirmed. The argument of most strength against it is the length of time that elapsed after the first judgment was obtained upon the plaintiff's bond, in 1818, until the filing of this bill. However, I do not consider that sufficient. The plaintiff, it is true, has not informed us of the time when he first discovered the testimony of Matthews, which he ought to have done. If the discovery was made shortly after the judgment was obtained, it was to be expected that an earlier application would have been made to this Court for relief against it. This (104) may have been omitted through ignorance, or from a belief that the plaintiffs at law would not proceed further upon it, after being made acquainted with Matthew's testimony. Be those things as they may, the time that has run since the judgment was obtained until this bill was filed does not, of itself, form a bar to the relief prayed for by the plaintiff. And it is further from it, as the defendants issued no execution upon the judgment obtained by them at law, but remained still until they issued process upon it, and obtained judgment thereon in 1828. When this latter judgment was obtained, the plaintiff states that he offered to prove the payment of the debt by Matthews, to which the plaintiffs at law objected, as they had a legal right to do. It therefore appears that the defendant was slow in asserting his claim at law, and the plaintiff was backward in his application to this Court, perhaps on that account. But the question was submitted to a jury in the Superior Court, *Page 90 
whether the debt was paid to the defendant's testator in his lifetime. They have responded that it was so paid. I therefore think that the decree of the Superior Court upon that finding should be affirmed, and that the defendant pay the costs of this Court, but the plaintiff must pay the costs at law and the costs in equity incurred in the Superior Court.